**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MELINDA K. JACKMAN-HANLIN**
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Nov 29 2012, 9:43 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JAMEY TASKEY, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 67A01-1204-CR-164 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE PUTNAM CIRCUIT COURT
The Honorable Charles D. Bridges, Special Judge
Cause No. 67C01-1011-FD-216

**November 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

Jamey Taskey ("Taskey") was convicted after a bench trial of Neglect of a Dependent as a Class D felony.[1] She now appeals and raises for our review the single issue of whether the State presented sufficient evidence to support her conviction.

We affirm.

**Facts and Procedural History**

Taskey, with her husband Brian Taskey ("Brian"), had three boys ("the Children"): seven-year-old C.T., five-year-old B.T., and two-year-old N.T. On November 1, 2010, Tim Haltom ("Haltom"), an investigator with the Department of Child Services, visited Taskey's residence in Cloverdale, Indiana, to investigate a report that five-year-old B.T. was bruised and had complained of pain to school officials. After Brian refused access to Taskey's residence, Haltom summoned Deputies Josh Boller ("Deputy Boller") and Phillip Troyer ("Deputy Troyer") of the Putnam County Sheriff's Department. Eventually, Haltom and Deputies Boller and Troyer were granted access to Taskey's residence.

Upon entering Taskey's residence, Haltom and Deputy Boller immediately detected a strong odor of urine and observed a large piece of dog feces by the front door. (Tr. 8, 60-61.) When Haltom entered B.T.'s bedroom, he immediately detected an odor of feces and observed several deposits of feces, some old and some fresh, on the bedroom floor. (Tr. 13, 36-39.) Taskey admitted the feces were from N.T., who defecated on the floor when not wearing a diaper. (Tr. 13.) B.T.'s sleeping bag and the blanket with which he slept were

---

[1] Ind. Code § 35-46-1-4(a)(1) (2010). The section was modified, effective February 22, 2012. We refer to the version of the statute in force at the time of the alleged crime.

soiled and sour smelling. (Tr. 13, 36.) B.T.'s bare mattress was soiled and dirty. (Tr. 14, 36.) In the bedroom in which C.T. and N.T. slept, Haltom observed feces on the floor, and that the bare mattress was soaked wet with urine. (Tr. 14, 41, 54.) As Halton observed the room, B.T. stood in the corner and openly urinated on the floor in view of Taskey. (Tr. 15.)

Haltom observed bruises covering B.T.'s body, and B.T. stated that "he got his ass whooped[] . . . with a belt." (Tr. 11.) Brian and Taskey both admitted to striking B.T. with a belt. (Tr. 11-12.) Taskey stated generally that the Children "get their . . . asses busted." (Tr. 12.)

On November 22, 2010, the State charged Taskey with Neglect of a Dependent as a Class D felony. Taskey waived trial by jury, and the trial court held a bench trial on January 13 and 26, 2012. On January 26, 2012, the trial court found Taskey guilty as charged, and entered a judgment of conviction against her. On March 20, 2012, the trial court imposed a sentence of three years imprisonment, with one year executed and two years suspended to probation. Taskey now appeals.

**Discussion and Decision**

Taskey appeals her conviction, after a bench trial, for Neglect of a Dependent as a Class D felony, raising the sole issue of whether the state presented sufficient evidence to support her conviction. When reviewing a defendant's conviction for sufficiency of the evidence after a bench trial,

> [t]his court will not reweigh the evidence or assess the credibility of witnesses. Cox v. State, 774 N.E.2d 1025, 1028 (Ind. Ct. App. 2002). Only the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom will be considered. Id. If a reasonable trier of fact could have found the

3

defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed. Id. at 1028-29.

Sargent v. State, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007).

To convict Taskey of Neglect of a Dependent as charged, the State was required to prove beyond a reasonable doubt that Taskey had care of the Children, and knowingly or intentionally placed them in a situation that endangered their life or health. Ind. Code § 35-46-1-4(a)(1). Taskey contends the State did not produce sufficient evidence to convict her as charged. In particular, she disputes whether the State presented "any evidence to show that Taskey 'knowingly' placed the children in an environment that would be dangerous to their life or health[.]" (Appellant's Brief at 4.)

The evidence favoring the judgment establishes the Children were in a situation that endangered their life or health. I.C. § 35-46-1-4(a)(1). Upon entering Taskey's residence, Haltom and Deputy Boller immediately detected a strong odor of urine and observed a large piece of dog feces by the front door. (Tr. 8, 60-61.) When Haltom entered B.T.'s bedroom, he immediately detected an odor of feces and observed several deposits of feces, some old and some fresh, on the bedroom floor. (Tr. 13, 36-39.) Taskey admitted the feces were from N.T., who defecated on the floor when not wearing a diaper. (Tr. 13.) B.T.'s sleeping bag and the blanket with which he slept were soiled and sour smelling (Tr. 13, 36.) B.T.'s bare mattress was soiled and dirty. (Tr. 14, 36.) In the bedroom in which C.T. and N.T. slept, Haltom observed feces on the floor, and that the bare mattress was soaked wet with urine. (Tr. 14, 41, 54.) As Halton observed the room, B.T. stood in the corner and openly urinated on the floor in view of Taskey. (Tr. 15.)

4

The evidence favoring the judgment further discloses Taskey had care of the children, and knowingly placed them in the situation that endangered their life or health. I.C. § 35-46-1-4(a)(1). Taskey is the mother of the Children, and she lived in the home with the Children. She admitted the feces on the floor were from N.T. (Tr. 13.) She was in the room with Haltom and B.T. when B.T. urinated on the floor, indicating she knew the urine soaking the mattress was from one of the Children. (Tr. 14-15.)

To the extent Taskey argues the evidence fails to show that she knowingly placed the children in an environment that endangered their life or health, she requests that we reweigh the evidence, which we decline to do. Sargent, 875 N.E.2d at 767.

## Conclusion

The State presented sufficient evidence to support Taskey's conviction; therefore we affirm.

Affirmed.

VAIDIK, J., and BROWN, J., concur.